IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


STEPHANIE LEANN STEINER,

               Plaintiff,

vs.                                        Case No. 15-1247-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

               Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

## I.  General legal standards

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

such evidence that a reasonable mind might accept to support the
conclusion.  The determination of whether substantial evidence
supports the Commissioner's decision is not simply a
quantitative exercise, for evidence is not substantial if it is
overwhelmed by other evidence or if it really constitutes mere
conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).
Although the court is not to reweigh the evidence, the findings
of the Commissioner will not be mechanically accepted.  Nor will
the findings be affirmed by isolating facts and labeling them
substantial evidence, as the court must scrutinize the entire
record in determining whether the Commissioner's conclusions are
rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan.
1992).  The court should examine the record as a whole,
including whatever in the record fairly detracts from the weight
of the Commissioner's decision and, on that basis, determine if
the substantiality of the evidence test has been met.  Glenn, 21
F.3d at 984.

    The Social Security Act provides that an individual shall
be determined to be under a disability only if the claimant can
establish that they have a physical or mental impairment
expected to result in death or last for a continuous period of
twelve months which prevents the claimant from engaging in
substantial gainful activity (SGA).  The claimant's physical or
mental impairment or impairments must be of such severity that

2

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On December 24, 2013, administrative law judge (ALJ) Susan W. Conyers issued her decision (R. at 92-104). Plaintiff alleges that she had been disabled since February 28, 2004 (R. at 92). Plaintiff meets the insured status requirements for social security disability benefits through June 30, 2009 (R. at

4

94).  At step one, the ALJ found that plaintiff did not engage
in substantial gainful activity since the alleged onset date (R.
at 94).  At step two, the ALJ found that plaintiff had a severe
combination of impairments (R. at 94-95).  At step three, the
ALJ determined that plaintiff's impairments do not meet or equal
a listed impairment (R. at 96).  After determining plaintiff's
RFC (R. at 97-98), the ALJ found at step four that plaintiff has
no past relevant work (R. at 103).  At step five, the ALJ found
that plaintiff could perform other jobs that exist in
significant numbers in the national economy (R. at 103-104).
Therefore, the ALJ concluded that plaintiff was not disabled (R.
at 104).

**III.  Did the ALJ err in his consideration of the medical source
opinions from Dr. Schwartz and Dr. Maxfield?**

On May 24, 2011, Dr. Schwartz performed a psychological
evaluation on the plaintiff; plaintiff was interviewed for the
evaluation (R. at 822-824).  Dr. Schwartz opined that
plaintiff's description of her symptomatology appears to be most
consistent with a bipolar I disorder with frequent manias and
then crashing.  Dr. Schwartz further stated that he did not find
any evidence of ADHD (attention deficit hyperactivity disorder)
(R. at 823-824).  In his diagnostic impressions, Dr. Schwartz
diagnosed bipolar I disorder (R. at 824).  Dr. Schwartz then

stated the following regarding her potential of competitive
employment:

> I did not detect any cognitive or memory
> impairment which would prevent her working.
> I believe that currently she does display
> bipolar symptomatology which would make it
> difficult for her to interact appropriately
> and be reliable on the job.

 (R. at 824).

The ALJ discussed the evaluation by Dr. Schwartz, but
stated that the longitudinal records from Comcare and Cowley
County "do not show bipolar symptoms, but focus more on the
claimant's ADHD" (R. at 102).  The ALJ further stated that there
is no support for the interactive limits of the type Dr.
Schwartz is discussing based on the longitudinal record, which
shows moderate symptoms and that the plaintiff could function as
a primary caregiver for two elderly people.  For these reasons,
Dr. Schwartz's opinion is given little weight (R. at 102).

According to the ALJ, the treatment records do not show
bipolar symptoms, as diagnosed by Dr. Schwartz.  However,
treatment records from the Behavioral Health and Addiction
Services diagnose bipolar I disorder on 11 occasions from
January 30, 2009 through March 4, 2010 (R. 585-605).  The
initial psychiatric evaluation from Cowley County Mental Health
and Counseling Center, dated September 14, 2010, diagnosed "rule
out bipolar disorder" (R. at 645).  On September 18, 2012,

COMCARE notes state that they would continue to assess whether client's difficulties with concentration and focus are a result of her bipolar disorder or ADHD (R. at 932).  On July 3, 2013 the COMCARE records diagnose bipolar disorder (R. at 941).  On July 11, 2013, another treatment provider also diagnosed bipolar disorder (R. at 944).

The ALJ discounted the opinions of Dr. Schwartz, in part, because of the ALJ's assertion that the treatment records do not show bipolar symptoms.  However, the treatment records from 2009-2013 repeatedly indicate a diagnosis of bipolar disorder.  The statement by the ALJ that the treatment records do not show bipolar symptoms is clearly erroneous.  Furthermore, the court cannot say that this error is harmless, given the fact that the limitations put forward by Dr. Schwartz are solely based on his diagnosis of bipolar disorder, which in his opinion, would make it difficult for the plaintiff to interact appropriately and be reliable on the job.

The court will next examine a psychological assessment done by Dr. Maxfield, a non-examining medical source, on June 28, 2011 (R. at 181-182, 185-186).  Dr. Maxfield had an opportunity to examine the report from Dr. Schwartz (R. at 182, 183).  Dr. Maxfield found that plaintiff was moderately limited in her ability to understand, remember and carry out detailed instructions, in her ability to maintain attention and

concentration for extended periods, in her ability to work in coordination with or in proximity to others without being distracted by them, in her ability to interact appropriately with the general public, and in her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes (R. at 185-186). Dr. Maxfield then set forth the following opinions regarding plaintiff's mental RFC:

> Claimant retains the capacity to remember simple instructions.
>
> Claimant is capable of completing a normal work day and work week on simple tasks.
>
> Claimant would do best with limited interactions with general public and with coworkers.

(R. at 185-186). Dr. Cummings affirmed these findings on April 17, 2012 (R. at 890). In his report, he noted limitations due to ADHD and bipolar disorder (R. at 890).

The ALJ found that this report was "substantially persuasive and informs the mental limitations in the above residual functional capacity" (R. at 103). In the ALJ's mental RFC findings, he concluded that plaintiff can perform "simple **and intermediate** tasks involving no more than occasional interaction with the general public, coworkers and supervisors" (R. at 98, emphasis added). However, Dr. Maxfield and Dr. Cummings had opined that plaintiff was limited to remembering simple instructions, and was limited to completing a normal work

day and work week on simple tasks (R. at 185-186).  There is no medical source opinion that plaintiff is capable of performing intermediate tasks.

An exact correspondence between a medical opinion and the RFC is not required.  <u>Wells v. Colvin</u>, 727 F.3d 1061, 1071-1072 (10th Cir. 2013).  However, according to SSR 96-8p, "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."  1996 WL 374184 at *7.  SSR rulings are binding on an ALJ.  20 C.F.R. § 402.35(b)(1); <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); <u>Nielson v. Sullivan</u>, 992 F.2d 1118, 1120 (10th Cir. 1993).  The ALJ, inexplicably, provided no explanation for including in her RFC findings that plaintiff could perform intermediate tasks.  First, no medical opinion evidence states that plaintiff can perform intermediate tasks.  Second, the ALJ found that the opinions of Dr. Maxfield and Dr. Cummings were substantially persuasive and informed the mental limitations in the ALJs' RFC findings.  However, Dr. Maxfield and Dr. Cummings indicated that plaintiff was limited to simple instructions and simple tasks.

In the case of <u>Martinez v. Astrue</u>, 422 Fed. Appx. 719, 724-725 (10th Cir. Apr. 26, 2011), the court held that the ALJ erred by failing to include all of the limitations found by Dr. LaGrand without explaining why he rejected some of the

limitations, especially in light of the ALJ's conclusion that the medical source's opinion was entitled to "great weight." The ALJ simply ignored certain limitations contained in the medical report.  The court held that the ALJ may have had reasons for giving great weight to some of the limitations set forth by the medical source, while rejecting other limitations. However, before rejecting some of the limitations, the ALJ was required to discuss why he did not include those limitations. An ALJ must explain why he rejected some limitations contained in a RFC assessment from a medical source while appearing to adopt other limitations contained in the assessment.  Haga v. Astrue, 482 F.3d 1205, 1207-1208 (10th Cir. 2007); Frantz v. Astrue, 509 F.3d 1299, 1302-1303 (10th Cir. 2007); Wilson v. Colvin, 541 Fed. Appx. 869, 872-874 (10th Cir. Oct. 16, 2013); Heppler v. Colvin, Case No. 12-1267-SAC (D. Kan. Aug. 28, 2013; Doc. 17 at 9-14).

The ALJ erred by failing to explain why her RFC findings allowed plaintiff to perform intermediate tasks when she had given great weight to a medical source opinion limiting plaintiff to simple tasks.[1]  There is no evidence before this

---

[1] Although defendant, in her brief, puts forth a rationale for including in the RFC findings that plaintiff could perform intermediate tasks (Doc. 24 at 17), an ALJ's decision should be evaluated based solely on the reasons stated in the decision.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).  A decision cannot be affirmed on the basis of appellate counsel's post hoc rationalizations for agency action.  Knipe v. Heckler, 755 F.2d 141, 149 n.16 (10th Cir. 1985).  A reviewing court may not create post hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision.  Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005).

court that would permit the court to conclude that this error
was harmless (i.e., the court has no evidence regarding the
impact of plaintiff being limited to only simple tasks as
compared to simple and intermediate tasks, and this was not
addressed by the parties).

As noted above, Dr. Schwartz had opined that the diagnosis
of bipolar disorder would make it difficult for her to interact
appropriately and be reliable on the job.[2]  Contrary to the ALJ's
assertion that bipolar symptoms do not appear in the treatment
notes, the treatment notes from 2009-2013 repeatedly diagnose
bipolar disorder.  Dr. Cummings noted that plaintiff had
limitations due to ADHD and bipolar disorder (R. at 890).  Dr.
Maxfield and Dr. Cummings, after reviewing the medical records,
including the report from Dr. Schwartz, found that plaintiff
should be limited to simple instructions, simple tasks, and
limited interaction with the general public and with coworkers.
The ALJ stated that she relied on the report from Dr. Maxfield
and Dr. Cummings in making her RFC findings.  However,
inexplicably, the ALJ made RFC findings that plaintiff could
engage in simple and intermediate tasks, even though Dr.
Maxfield and Dr. Cummings had limited plaintiff to only simple
tasks.  In light of these errors, the court finds that

---

[2] The agency record includes an evaluation of the opinion of Dr. Schwartz, stating that this opinion is given some weight.  It further states that claimant will have difficulties being reliable.  However, she has the capacity, with motivation, to complete a normal workday and workweek (R. at 183).  However, it is not clear from the agency record whether Dr. Maxfield or someone else rendered this evaluation of the opinion of Dr. Schwartz.

substantial evidence does not support the ALJ's mental RFC findings, and the case should therefore be remanded for further hearing.

Plaintiff also argues that the opinion of Dr. Maxfield that plaintiff would do best with limited interactions with the general public and with coworkers (R. at 186) is not consistent with the ALJ's RFC finding that she should have no more than occasional interaction with the general public, coworkers and supervisors (R. at 98). Occasional is defined as an activity or condition which exists up to 1/3 of the time. Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (U.S. Dept. of Labor, 1993 at C-3). Because "limited" is not defined by Dr. Maxfield, the court cannot say that, on its face, that the ALJ limitation of occasional interaction is inconsistent with limited interactions.

**IV.  Did the ALJ err in her evaluation of the opinions of Dr. Friesen, a treatment provider?**

On April 23, 2013, Dr. Friesen wrote a letter indicating that plaintiff was physically and emotionally unable to continue in school (R. at 1094). On August 28, 2013, Dr. Friesen signed a letter discussing plaintiff's physical impairments and limitations, including a limitation of sitting or standing for less than 4 hours a day (R. at 1209-1212). The ALJ discussed

these opinions by Dr. Friesen, and for a number of reasons accorded them little weight (R. at 100-101).

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence. See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion). The court can only review the sufficiency of the evidence. Although the evidence may support a contrary finding, the court cannot displace the agency's choice between two fairly conflicting views, even though the court may have justifiably made a different choice had the matter been before it de novo. Oldham v. Astrue, 509 F.3d 1254, 1257-1258 (10th Cir. 2007).

Plaintiff makes numerous arguments regarding the weight the ALJ accorded to the opinions of Dr. Friesen. However, many of these arguments involve the reweighing of evidence or weighing evidence which is capable of more than one reasonable interpretation. The court will not reweigh the evidence. However, the court would note that the ALJ discounted some of

the opinions of Dr. Friesen regarding plaintiff's mental impairments and limitations, stating that he is not a mental health expert (R. at 100).  However, on remand, the opinions of Dr. Friesen regarding plaintiff's mental impairments and limitations must be considered after giving proper consideration to the opinions of Dr. Maxfield, Dr. Cummings and Dr. Schwartz.

In discussing the treatment records from Dr. Friesen and in discounting the opinions of Dr. Friesen, the ALJ made two statements: (1) plaintiff indicated that "her whole back hurt," which, according to the ALJ, is not supported by medical imagery (citing to R. at 1063-1065), and (2) plaintiff had a "normal range of motion" (citing to 1066-1067) (R. at 100).[3]  In her brief, defendant concedes that the ALJ's quote "her whole back hurt" is not contained in the medical record (Doc. 24 at 11 n.4).  In fact, the record indicated that plaintiff seemed hypersensitive to the whole left side of her back, and that it was worse about L4,5, and that the right side seemed much less tender (R. at 1064).  Furthermore, in her brief, defendant concedes that the ALJ incorrectly stated that plaintiff had a normal range of motion (Doc. 24 at 11).  In fact, the medical record stated that plaintiff was able to extend her back nearly normally, but complains of pain flexion of the back.  The left

---

[33] Later, in discounting the opinions of Dr. Friesen, the ALJ stated that Dr. Friesen's own treatment notes show a "full range of motion" (R. at 101).

leg was unable to do a straight leg lift, and that she can bend laterally both sides about half normal (R. at 1067).

Defendant explains that these are merely "minor" discrepancies (Doc. 24 at 11). However, this court is very concerned when the ALJ misstates the record, and defendant's brief acknowledges that those statements do not appear in the record. The record should be accurately reported. There is no legitimate excuse for stating that plaintiff had a normal or full range of motion or that "her whole back hurt" (which the ALJ put in quotes, R. at 100) when the record did not contain either statement, and the record is more ambiguous than the statements asserted by the ALJ. On remand, the ALJ should reevaluate the opinions of Dr. Friesen after taking into consideration the medical opinion evidence regarding plaintiff's mental impairments and limitations, and make new findings regarding the weight to be accorded to his opinions which are clearly supported by the record.

Finally, the court would note that, according to the ALJ, the letter of Dr. Friesen dated April 23, 2013 was based on plaintiff's self-report, and is not a functional assessment of the plaintiff (R. at 100). In the case of Langley v. Barnhart, 373 F.3d 1116, 1121 (10th Cir. 2004), the court held:

> The ALJ also improperly rejected Dr.
> Hjortsvang's opinion based upon his own
> speculative conclusion that the report was

based only on claimant's subjective
complaints and was "an act of courtesy to a
patient." Id. The ALJ had no legal nor
evidentiary basis for either of these
findings. Nothing in Dr. Hjortsvang's
reports indicates he relied only on
claimant's subjective complaints or that his
report was merely an act of courtesy. "In
choosing to reject the treating physician's
assessment, an ALJ may not make speculative
inferences from medical reports and may
reject a treating physician's opinion
outright only on the basis of contradictory
medical evidence and *not due to his or her
own credibility judgments, speculation or
lay opinion.*" McGoffin v. Barnhart, 288 F.3d
1248, 1252 (10th Cir.2002) (quotation
omitted; emphasis in original). And this
court "held years ago that an ALJ's
assertion that a family doctor naturally
advocates his patient's cause is not a good
reason to reject his opinion as a treating
physician." Id. at 1253.

Subsequently, in the case of Victory v. Barnhart, 121 Fed. Appx.

819 (10th Cir. Feb. 4, 2005), the court held:

The ALJ's finding that Dr. Covington's
opinion was based on claimant's own
subjective report of her symptoms
impermissibly rests on his speculative,
unsupported assumption. See Langley, 373
F.3d at 1121 (holding that ALJ may not
reject a treating physician's opinion based
on speculation). We find no support in the
record for the ALJ's conclusion. Nothing in
Dr. Covington's report indicates that he
based his opinion on claimant's subjective
complaints, and the ALJ's finding ignores
all of Dr. Covington's examinations, medical
tests, and reports. Indeed, the ALJ's
discussion of Dr. Covington omits entirely
his March 22, 2001 examination and report.
His April 3, 2001 statement might well have
been based on his recent first-hand

> examination and observation of claimant
> during this examination, performed less than
> two weeks earlier, rather than on claimant's
> subjective complaints, as the ALJ
> speculated. <u>See</u> <u>Morales v. Apfel</u>, 225 F.3d
> 310, 317 (3d Cir.2000) (noting that the
> treating physician's opinion may "reflect
> expert judgment based on a continuing
> observation of the patient's condition over
> a prolonged period of time").

121 Fed. Appx. at 823-824.

As <u>Langley</u> makes clear, the ALJ must have a legal or evidentiary basis for asserting that a medical source report was based on plaintiff's subjective complaints.  However, the ALJ did not cite to either a legal or evidentiary basis for his assertions that the opinions of Dr. Friesen were based on plaintiff's self-reports.  Nothing in his letter indicated that he relied only on plaintiff's subjective complaints or that his report was merely an act of courtesy to his patient.  In fact, as noted in <u>Victory</u>, his opinions might well have been based on his recent first-hand examinations and observation of claimant during these examinations, rather than on plaintiff's subjective complaints, as the ALJ speculated.  Dr. Friesen had examined plaintiff on March 11, 2013 (R. at 1066-1067) and on April 23, 2013 (R. at 1063-1065), the date in which the letter was written (R. at 1094).  This finding by the ALJ was clearly erroneous.

**V.  Other issues raised by plaintiff**

Plaintiff argued that the ALJ did not find plaintiff's ADHD as a severe impairment (Doc. 18 at 4).  In fact, the ALJ did find that plaintiff's ADHD was a severe impairment at step two (R. at 94-95).  On remand, the ALJ shall make new mental RFC findings after conducting a proper evaluation of all the evidence, including the opinions of Dr. Maxfield, Dr. Cummings (who noted limitations due to ADHD and bipolar disorder, R. at 890)), and Dr. Schwartz.

At step two, the ALJ found that plaintiff's headaches were a non-severe impairment, and found that plaintiff's bladder incontinence was a severe impairment (R. at 95).  Plaintiff argues that the ALJ erred in her evaluation of these impairments.  On remand, the ALJ should address the issues raised by plaintiff, including records of emergency room treatment and rebound headaches.  However, the court would note that plaintiff has failed to point to any evidence that these impairments resulted in limitations not included in the ALJ's RFC findings.

In the case of <u>Arles v. Astrue</u>, 438 Fed. Appx. 735, 737, 740 (10th Cir. Sept. 28, 2011), obesity was identified as one of plaintiff's severe impairments.  The court noted that the claimant did not discuss or cite to any evidence showing that obesity further limited his ability to perform a restricted range of sedentary work.  The court held that the ALJ's decision

provided an adequate explanation of the effect of obesity on plaintiff's RFC.  On remand, plaintiff should point to evidence that these impairments result in specific limitations not included in the ALJ's RFC findings (R. at 97-98).

Finally, the court would note plaintiff's argument regarding plaintiff's drug history, which was cited by the ALJ in evaluating plaintiff's credibility.  This involves the potential application of legislation and regulations governing the impact of drug and/or alcohol use.  In 1996, Congress passed Public Law 104-121.  It added the following language to 42 U.S.C. § 423(d)(2):

> (C) An individual shall not be considered to be disabled for purposes of this title if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled.

20 C.F.R. § 404.1535 (disability insurance) and § 416.935 (SSI) are identical, and are the implementing regulations governing this issue.  The implementing regulations make clear that a finding of disability is a condition precedent to an application of §423(d)(2)(C).  The Commissioner must first make a determination that the claimant is disabled.  He must then make a determination whether the claimant would still be found disabled if he or she stopped abusing alcohol or drugs.  If so, then the alcohol or drug use is not a contributing factor

material to the finding of disability.  If however, the
claimant's remaining impairments would not be disabling without
the alcohol or drug abuse, then the alcohol or drug abuse is a
contributing factor material to the finding of disability.  The
ALJ cannot begin to apply §423(d)(2)(C) properly when he has not
yet made a finding of disability.  Drapeau v. Massanari, 255
F.3d 1211, 1214-1215 (10th Cir. 2001).  In other words, an ALJ
must first conduct the five-step inquiry without separating out
the impact of alcoholism or drug addiction.  If the ALJ finds
that the claimant is not disabled under the five-step inquiry,
then the claimant is not entitled to benefits and there is no
need to proceed with the analysis under §§ 404.1535 or 416.935.
If the ALJ finds that the claimant is disabled and there is
medical evidence of his or her drug addiction or alcoholism,
then the ALJ should proceed under §§ 404.1535 or 416.935 to
determine if the claimant would still be found disabled if he or
she stopped using alcohol or drugs.  Bustamante v. Massanari,
262 F.3d 949, 955 (9th Cir. 2001).

     After reviewing the arguments of the parties, and the ALJ
decision, the court finds no clear error in the ALJ's
consideration of plaintiff's drug use.  There is no reason why
an ALJ cannot consider drug use as part of the credibility
analysis and when evaluating other medical evidence.  The
consideration of plaintiff's drug use, on the facts of this

case, did not require the application of the legislation and regulations noted above.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 28th day of September 2016, Topeka, Kansas.


s/Sam A. Crow_____
Sam A. Crow, U.S. District Senior Judge